IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Steven Boss Gillian, | ) | C/A No. 0:24-4510-SAL-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Terri Wallace, Warden, Kirkland Correctional Institution, | ) ) | |
| | ) | |
| Respondent. | ) ) | |

This counseled petition for a writ of habeas corpus is brought pursuant to 28 U.S.C. § 2254.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Respondent's motion for summary judgment. (ECF No. 36.) Petitioner filed a response in opposition (ECF No. 42), and Respondent replied (ECF No. 43). Having carefully considered the parties' submissions and the record in this case, the court finds that Respondent's motion should be granted and the Amended Petition be denied.

## BACKGROUND

In January 2001, Petitioner recruited five younger boys, including Jeremiah Page, to rob a lake house Petitioner had canvassed. The burglary yielded a stolen five-shot "Taurus" .38 caliber revolver, which Petitioner kept for himself. The following evening, Petitioner, Page, and Petitioner's friend, Jason Ward, attended a party at Michael Glenn's house. Page was involved in an altercation and kicked out of the party. Petitioner got belligerent, beat up Page, and threatened

---

[1] Petitioner initially filed this action *pro se*. On October 16, 2024, the court granted Petitioner's motion for the appointment of counsel and allowed counsel time to file an amended petition. (See ECF Nos. 16, 21.)

other people at the party. Ward attempted to calm Petitioner and eventually agreed to leave the party with him. As the two left, Petitioner announced to several guests, "You will see this in the newspapers tomorrow." Ward's body was found the next morning behind a shopping center. Ward had four bullet wounds to the head and one to the neck. He had been shot with bullets fired from a .38 caliber handgun manufactured by the "Taurus" company. That same morning, Petitioner drunkenly confessed to his brother and cousin that he had shot and killed Ward.

Petitioner was indicted by the Richland County grand jury in February 2001 for the murder of Jason Ward. He proceeded to trial in February 2002 and was represented by Beattie Butler, Esquire, and Sheila Mims, Esquire. A jury found Petitioner guilty as charged and the trial court imposed the maximum sentence—life without the possibility of parole.

Petitioner, through Assistant Appellate Defender Robert M. Dudek, raised the following issues on appeal:

> 1.      Whether the court erred by admitting detailed evidence appellant committed a Lexington County burglary and a burglary at Dems Jewelry Store since this highly prejudicial evidence of other criminal conduct was not necessary to establish that appellant had the gun that might have killed the decedent, and the prior burglaries evidence was not admissible under State v. Lyle and Rules 403 and 404(B), SCRE?
>
> 2.      Whether the court erred, and denied appellant his Constitutional right to confrontation, by refusing to allow the defense to cross-examine key state's witness Jeremiah Page about the fact that he was facing a possible sentence of fifteen years to life imprisonment for burglary in the first degree, since this was evidence of Page's possible bias to slant his testimony under Rule 608, SCRE?
>
> 3.      Whether the court erred by refusing to allow defense counsel to cross-examine Investigator James Smith about the fact the state used a ruse which involved moving appellant's car to the crime scene and photographing it from the air in an effort to obtain a confession, since this was relevant evidence for the jury to consider about the state's case even though the ruse did not produce a confession?

(App. at 1086, ECF No. 35-3 at 89.) After full briefing and oral argument, the South Carolina Court of Appeals affirmed Petitioner's conviction on June 28, 2004.[2] See State v. Gillian, 602 S.E.2d 62 (S.C. Ct. App. 2004).

On June 4, 2015, while housed at Gilliam Psychiatric Hospital, Petitioner filed a *pro se* application for post-conviction relief. (App. at 1297, ECF No. 35-3 at 300.) Petitioner asserted that he was being held unlawfully because microscopic robots had controlled him from an early age, including during the murder and his trial. As Petitioner's application was filed well beyond the applicable statute of limitations, the state moved for dismissal. However, the state also moved for a hearing to determine whether Petitioner's mental health complications prevented him from filing a timely application. Petitioner was appointed counsel and scheduled for evaluation by the South Carolina Department of Mental Health. Petitioner's PCR counsel filed multiple amendments to the PCR application, asserting various claims of ineffective assistance of trial and appellate counsel, including claims that trial counsel was ineffective for failing to object to hearsay testimony.

On March 28, 2022, the PCR court held an evidentiary hearing concerning Petitioner's competency, the state's motion to dismiss, and the merits of Petitioner's claims. (See App. at 1373, ECF No. 35-3 at 376.) The PCR court heard testimony from Dr. Donna Schwartz Maddox, an expert in forensic psychiatry who had evaluated Petitioner's competency. Dr. Schwartz

---

[2] Appellate counsel petitioned for certiorari review by the South Carolina Supreme Court on all three issues. The court granted certiorari as to direct appeal issues one and three. Certiorari was denied as to issue two, which is the only direct appeal issue raised in this federal habeas petition, without further explanation. Accordingly, the Court of Appeals' decision as to that issue is the relevant decision for purposes of federal habeas review. See Wilson v. Sellers, 584 U.S. 122, 125 (2018) (holding that a federal habeas court should "look through" the unexplained decision to the last related state court decision that provides a relevant rationale, and presume that the unexplained decision adopted the same reasoning, unless the State can rebut the presumption).

Maddox testified that Petitioner was "one of the most psychotic individuals [she] ha[d] ever seen in over thirty years of practice as a psychiatrist." (App. at 1389, ECF No. 35-3 at 392.) She opined that Petitioner was not likely to have regained competency between 2008 and 2015 such that he could have filed a PCR application during that time. (App. at 1393, ECF No. 35-3 at 396.) Based on this testimony, the state withdrew its motion to dismiss the application as untimely.[3] (App. at 1396, ECF No. 35-3 at 399.)

The PCR court also heard testimony from Petitioner's trial and appellate counsel. However, because Petitioner had been found incompetent to stand trial, he was not permitted to testify on his own behalf at the hearing. The PCR court denied Petitioner's application by written order filed April 28, 2022. (App. at 1461, ECF No. 35-3 at 464.)

Petitioner filed a timely notice of appeal and, through a Johnson[4] petition for a writ of certiorari by Ashley A. McMahan, Esquire, presented one issue: "Did the PCR court err in finding trial counsel[] effective when counsels failed to object to hearsay throughout the trial?" (ECF No. 35-6 at 3.) Although Petitioner was advised of his right to file a *pro se* response to the petition, he did not do so. (See ECF No. 35-7 at 1-2.) The Supreme Court of South Carolina transferred the matter to the South Carolina Court of Appeals, which denied certiorari on May 8, 2024. (ECF No.

---

[3] Similarly, Respondent expressly waives any statute of limitations defense in this action. (See ECF No. 35 at 23 n.14.)

[4] Johnson v. State, 364 S.E.2d 201 (S.C. 1988) (applying the factors in Anders v. California, 386 U.S. 738 (1967), to post-conviction appeals). Anders requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. Anders, 386 U.S. at 744.

35-8 (transfer order); ECF No. 35-9 (order denying certiorari)).[5]  The remittitur issued on May 31, 2024.  (ECF No. 35-10.)  This federal petition for a writ of habeas corpus followed.

## FEDERAL HABEAS ISSUES

The Amended Petition for a writ of habeas corpus raises the following grounds for relief, quoted verbatim:

> **Ground One:** The Petitioner's Sixth Amendment right to cross examine and confront witnesses was violated by the trial court's failure to allow cross examination of witness Jeremiah Page's potential bias.
>
> **Supporting Facts:** Jeremiah Page had a pending burglary first degree charge. Counsel attempted to delve into Page's bias by eliciting testimony of the potential sentence if found guilty of burglary first degree and what he expected to receive for his cooperation.  Defense counsel asked, "and that carries a sentence of 15 to life?"  The prosecution objected and the court sustained the objection.  A bench conference off the record was held and subsequent questions related to the penalty for burglary were "you are facing a lot of time, serious time, prison time, time incarcerated in prison."
>
> **Ground Two:** Petitioner's Sixth Amendment right to effective assistance of counsel was violated by counsel's failure to object to hearsay testimony of witnesses in his case.
>
> **Supporting Facts:** Counsel failed to object to witness Ritchie Cunliffe hearsay testimony that Valek was worried about the police coming to his home.  During the testimony of Michael Glenn, counsel fails to object to hearsay testimony that Petitioner yelled, "you will see this in the newspaper tomorrow[!]"  According to Glenn, the victim Ward was last seen with Petitioner.  Witness Ronnie Muller presented hearsay

---

[5] Since then, Petitioner has filed two state habeas petitions and a second PCR application *pro se*.  (See ECF Nos. 35-11, 35-12, 35-13.)  Petitioner's state habeas actions were administratively dismissed.  (See ECF Nos. 35-11 at 4, 35-12 at 14.)  Petitioner's second PCR application has been dismissed as untimely and successive.  See Case No. 2025CP4000658, Richland County Fifth Judicial Circuit Public Index, available at https://publicindex.sccourts.org/Richland/PublicIndex/PISearch.aspx (last visited November 17, 2025).

|  |  |
|---|---|
|  | testimony when he testified that he was told that a firearm was missing from his sister-in-law, Nancy Muller's safe. |
| **Ground Three:** | Petitioner's Fifth, Sixth and Fourteenth Amendment due process rights and effective assistance of counsel were violated when the prosecutor commented about the truthfulness of witnesses. |
| **Supporting Facts:** | Jeremiah Page during direct examination was asked about any offers that were made for his cooperation in the trial. The prosecutor responded, "I have told you that I would say you" and Jeremiah responds "That I told the truth." During closing argument, the prosecutor tells the jury, But you could tell from Richie's demeanor that his powers of concentration aren't that great, but he's a very truthful young man. Counsel for Petitioner failed to object to these prejudicial statements. |

(Am. Pet., ECF No. 22 at 6-9.)

## DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-

moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Erickson v. Pardus, 551 U.S. 89 (2007), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.      Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 572 U.S. 415, 419 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 572 U.S. at 419-20 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington, 562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories

supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

**C.     Exhaustion Requirements**

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d at 447-48;

see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.     Respondent's Motion for Summary Judgment**

   **1.     Procedural Default**

Respondent asserts that Ground Three is procedurally defaulted and that Petitioner has not argued cause and prejudice to excuse the default. (ECF No. 35 at 22, 29.) In response, Petitioner voluntarily withdraws Ground Three. (ECF No. 42 at 8.) Respondent does not oppose the withdrawal. (ECF No. 43 at 1.) Accordingly, Ground Three is withdrawn and the court will not address the merits of the claim or rule on whether it is procedurally defaulted.

   **2.     Ground One**

In Ground One, Petitioner asserts that he was denied his Sixth Amendment right to cross-examine and confront witnesses when the trial court refused to allow Petitioner's counsel to question Page, who had been charged with first-degree burglary, about whether he was expecting to receive a reduced sentence in exchange for his testimony. Ground One was raised to the South Carolina Court of Appeals on direct appeal. The Court of Appeals found that the trial court did err in excluding evidence of Page's possible sentence but found that error harmless pursuant to Delaware v. Van Arsdall, 475 U.S. 673 (1986). (ECF No. 35-3 at 160-69.) Petitioner's challenge to the state court's decision therefore rests on the reasonableness of the state court's harmless error analysis.

As explained by the United States Supreme Court in Van Arsdall,

> the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to . . . harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Van Arsdall, 475 U.S. at 684.

Applying this precedent and related South Carolina state cases to Petitioner's case, the South Carolina Court of Appeals found as follows:

> First, in the case against [Petitioner], the testimony of Page was largely cumulative. Other witnesses testified as to both the lake house burglary and the events of the evening and early morning hours leading up to the murder. In fact, [Petitioner's] vague statement that he intended to use the gun to "[d]o some dirt" was the only evidence on record supported solely by the testimony of Page. . . [T]he absence of this witness' testimony leaves no material point of the State's case uncorroborated or unsupported by the testimony of other witnesses.
>
> Second, even assuming the omission of Page's testimony, there remains, at the very least, abundant evidence upon which one could find [Petitioner] guilty of murder. [Petitioner] was in possession of a five-shot revolver consistent with the handgun used to shoot Ward five times. He stated to an entire household of partygoers, as he was leaving with Ward (who had just embarrassed him in front of several others), that they would "see this in the newspapers tomorrow." Following the murder, [Petitioner] confessed to his brother that he had killed Ward. In addition, he admitted to his cousin that he had killed someone behind a jewelry store. Concomitantly, while the trial court erred by limiting [Petitioner's] cross-examination of Page, the error was harmless because it could not reasonably have affected the result of the trial.

(App. at 1164, ECF No. 35-3 at 169.)

Petitioner argues that the Court of Appeals erred because "Page was an important witness to the state's case and his testimony was not cumulative." (ECF No. 42 at 10.) In support,

Petitioner points to Page's testimony about the events leading up to the burglary, including how and where he and Petitioner had the keys to the house made, and asserts that Page was the only person "who was outside that testified he heard yelling, punching and cursing between Petitioner and Ward." (Id. at 10-11.)

Petitioner fails to show any error in the state court's application of clearly established federal law or determination of the facts. The Court of Appeals appropriately applied Van Arsdall and considered the list of factors pertinent to whether a Confrontation Clause error is harmless. Concerning whether Page's testimony was cumulative, the court found that it was "largely cumulative," but also acknowledged that portions were not. Regarding those portions, the court found that they left no "material point of the State's case" unsupported or uncorroborated. (ECF No. 35-3 at 169.)

Several other witnesses testified about the altercation between Ward and Petitioner at the party. (See App. at 301-09, ECF No. 35-1 at 304-12 (testimony of Richie Cunliffe); App. at 324-45, ECF No. 35-1 at 327-48 (testimony of Michael Glenn); App. at 359-68, ECF No. 35-1 at 362-71 (testimony of Matthew Dickerson); App. at 381-92, ECF No. 35-1 at 384-95 (testimony of Alston Lee), App. at 405-10, ECF No. 35-1 at 408-12 (testimony of Rachel Armstrong)). While these witnesses did not specifically testify that they were outside and heard yelling, punching, and cursing, their testimony firmly established that Petitioner was angry at Ward and possibly planned to hurt him when they left the party together. In addition, Page was not the only codefendant in the burglary to testify against Petitioner at his murder trial. (See App. at 478-95, ECF No. 35-1 at 481-98 (testimony of Jessie Boot); App. at 527-36, ECF No. 35-2 at 30-38 (testimony of Brandon Cannon); App. at 552-59, ECF No. 35-2 at 55-62 (testimony of David Grice)). Significantly for the prosecution, three of these witnesses testified that Petitioner masterminded the robbery and

that he kept the .38 Taurus that was stolen from the house. Petitioner thus fails to show how Page's testimony about the altercation between Petitioner and Ward was material to the state's case.

This is especially true in light of the strength of the state's case—the final Van Arsdall factor relied on by the state court. Notably, Petitioner offers no argument in contradiction to the state court's finding that, "even assuming the omission of Page's testimony, there remain[ed], at the very least, abundant evidence upon which one could find [Petitioner] guilty of murder." (ECF No. 35-3 at 169.) Petitioner fails to show that the state court unreasonably applied clearly established federal law or based its decision on an unreasonable interpretation of the facts. Respondent's motion for summary judgment should be granted as to Ground One.

### 3. Ground Two

In Ground Two, Petitioner asserts that he was denied the effective assistance of counsel when his trial counsel failed to object to hearsay testimony from three witnesses: Richie Cunliffe, Michael Glenn, and Ronnie Muller. (ECF No. 22 at 8.) Respondent contends that the PCR court reasonably determined that trial counsel was not deficient and that the witness testimony was not prejudicial. (ECF No. 35 at 26-29.)

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims"). To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the

United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105. The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

As stated above, the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court. If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. In the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Court of Appeals, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Petitioner's petition. See Wilson v. Sellers, 584 U.S. 122, 125 (2018) (holding that a federal habeas court should "look through" the unexplained decision to the last related state court decision that provides a relevant rationale, and presume that the unexplained decision adopted the same

reasoning, unless the State can rebut the presumption). Therefore, the court turns to the question whether the PCR court's order unreasonably misapplied federal law or was based on an unreasonable determination of the facts. Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

Relying on Strickland, the PCR court addressed each of the three witnesses' testimony in turn. (App. at 1468-73, ECF No. 35-3 at 471-76.) As to Cunliffe, Petitioner argued that trial counsel should have objected when Cunliffe testified that another friend, high-schooler Parker Valek, was worried that police might come break up his party. At the PCR hearing, trial counsel explained that she did not object because the testimony merely suggested that Valek was anxious about the police showing up because he was a teenager hosting a party, not because Petitioner was present. In addition, counsel testified that the statement was not hearsay because it was not offered for the truth of the matter asserted. The PCR court found that counsel exercised reasonable judgment and that Cunliffe's testimony was not prejudicial. (App. at 1470, ECF No. 35-3 at 473.) Further, the PCR court found that Cunliffe's testimony "was proper and did not constitute hearsay" under the South Carolina Rules of Evidence. (Id.)

Petitioner argues only that "[a]llowing the testimony of Richie Cunliffe deprived Petitioner of his right to effective assistance of counsel. Counsel's failure to object allowed the jury to hear testimony that would have otherwise been inadmissible." (ECF No. 42 at 13-14.) Petitioner does not address the PCR court's prejudice finding, which could be dispositive of this claim. Nor can Petitioner's bare assertion that the testimony was inadmissible overcome the deference this court owes to the PCR court's determinations on state evidentiary issues. The PCR court properly weighed the evidence before it and found trial counsel's testimony credible. And the PCR court

determined that Cunliffe's testimony was not hearsay as a matter of state law. Petitioner does not challenge those findings and the court will not independently evaluate their reasonableness. See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010)); Richardson v. Kornegay, 3 F.4th 687, 696 (4th Cir. 2021) ("We do not generally review state-court determinations of state-law questions, like the admissibility of evidence.").

As to Glenn, Petitioner argued that trial counsel should have objected to his testimony that Petitioner yelled, "you will see this in the newspaper tomorrow," and that Petitioner was the last person he saw with Ward. Counsel testified that she did not find this testimony objectionable, and the PCR court agreed. The PCR court specifically found that Petitioner's statement was not hearsay. (App. at 1471, ECF No. 35-3 at 474.) The PCR court thus found that counsel's performance was not deficient and that Petitioner was not prejudiced by the alleged deficiency. (Id.)

Petitioner includes Glenn's testimony in the supporting facts section of the Amended Petition and quotes that testimony in his response to Respondent's motion for summary judgment. (See ECF Nos. 22 at 8, 42 at 12.) However, nowhere does Petitioner argue that the PCR court's decision on this issue was unreasonable. (See ECF No. 42 at 13-14) (argument concerning other two alleged instances of hearsay testimony to which counsel failed to object). Accordingly, Petitioner has abandoned this portion of Ground Two. See Eady v. Veolia Transp. Servs., Inc., 609 F. Supp. 2d 540, 560-61 (D.S.C. 2009) ("The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action.");

Sawyers v. United Parcel Serv., Inc., C/A No. 1:18CV1037, 2019 WL 4305771, at *3 (M.D.N.C. Sept. 11, 2019) (collecting cases showing that "[t]his district and others within the Fourth Circuit agree that failing to respond to an argument constitutes an abandonment of a claim").

As to Muller, Petitioner argued that trial counsel should have objected when Muller testified that his sister-in-law, who owned the .38 Taurus, told him that the gun was missing from her safe. Trial counsel testified that, while preventing the state from connecting the stolen gun to Petitioner was important, the state established that link through numerous other witnesses. She also explained that, as a general trial strategy, she did not object to every potentially objectionable piece of evidence to keep favor with the jury. The PCR court found that counsel exercised reasonable professional judgment, and that Petitioner did not suffer any prejudice because "the same evidence was established by other witnesses." (App. at 1473, ECF No. 35-3 at 476.)

Petitioner asserts that "Muller's testimony regarding the gun was critical evidence in Petitioner's trial" and that counsel's failure to object "left the jury with no other conclusion than the gun that was stolen from the break-in . . . was the same weapon possessed and used by Petitioner to kill Ward." (ECF No. 42 at 14.) Again, Petitioner offers mere disagreement with the PCR court's findings rather than evidence that those findings were unreasonable or resulted from a misapplication of Strickland. In fact, the PCR court's deference to counsel's strategic decision comports with Strickland's guidance. See McCarver v. Lee, 221 F.3d 583, 594 (4th Cir. 2000) ("In evaluating trial counsel's performance, we must be highly deferential to counsel's strategic decisions and not allow hindsight to influence our assessment of counsel's performance.") (citing Strickland, 466 U.S. at 689).

In sum, Petitioner fails to show that the PCR court's denial of his ineffective assistance of counsel claims was either contrary to or an unreasonable application of Strickland or based on an

unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  Accordingly, Respondent's motion for summary judgment should be granted as to Ground Two.

## RECOMMENDATION

For the foregoing reasons, the court recommends Respondent's motion for summary judgment (ECF No. 36) be granted and the Amended Petition be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

November 21, 2025
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).